UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re ) <br> ) <br> LOUIS J. PEARLMAN, et al.,   ) <br> ) <br> Debtor. ) <br> ) | Case No.  6:07-bk-00761-KSJ <br> Chapter 11 |
| ) <br> SONEET R. KAPILA, as CHAPTER 11   ) <br> TRUSTEE ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> JOHN HINES, ) <br> ) <br> Defendant. ) <br> ) | Adversary No. 6:09-ap-00798-KSJ |

**MEMORANDUM OPINION PARTIALLY GRANTING
AND PARTIALLY DENYING DEFENDANT'S MOTION TO DISMISS**

Defendant is an aspiring actor who entered into an exclusive personal management agreement with Louis J. Pearlman's bankrupt management company, Trans Continental Management, Inc. ("TCM").  Plaintiff, the Chapter 11 trustee appointed to administer the Debtors' jointly administered bankruptcy estate,[1] filed this adversary proceeding to recover advances TCM made to defendant for living expenses between December 2004 and June 2006. In Count I and II, the trustee seeks to avoid these transfers as constructively fraudulent

---

[1] Debtor is a Debtor in one of many jointly administered bankruptcy cases consolidated under the Pearlman Ponzi scheme in Case No. 6:07-bk-00761-KSJ (bankruptcy of Louis J. Pearlman).  The cases jointly administered under 06:07-bk-00761 include Trans Continental Television Productions, Inc., Case No. 07-bk-01856, Trans Continental Aviation, Inc., Case No. 07-bk-02431, Trans Continental Management, Inc., Case No. 07-bk-02432, Trans Continental Publishing, Inc., Case No. 07-bk-04160, Louis J. Pearlman Enterprises, LLC, Case No. 07-bk-01779, and TC Leasing, LLC, Case No. 07-bk-04160.

under Bankruptcy Code[2] §§ 544, 548, and comparable Florida statutes.[3] Alternatively, in Count III, the trustee requests recovery of these amounts as damages for breach of contract because defendant failed to repay the monies advanced.

Defendant, a *pro se* party, filed a motion to dismiss all three counts.[4] He argues Counts I and II should be dismissed because TCM allegedly received fair consideration and reasonably equivalent value for the transfers, and because California law prohibits the recovery of any wages paid by an employer to an employee.[5] Defendant argues Count III also should be dismissed because there was no contractual obligation to repay the advances, because he never performed or earned wages or other income from which the advances would be deducted.

Debtor, Louis J. Pearlman, along with some of his co-debtor companies—Trans Continental Airlines ("TCA"), Trans Continental Records ("TCR"), and Louis J. Pearlman Enterprises ("Enterprises")—bilked thousands of investors out of hundreds of millions of dollars through the perpetration of different Ponzi schemes.  While Mr. Pearlman was operating his Ponzi scheme, he also managed a number of entertainment-related entities, including Trans Continental Management, Inc., which purported to operate as a Florida-based exclusive personal management operation guiding aspiring actors and performers to success. One of these performance artists was the Defendant, John Wesley Hines.

Defendant entered into an exclusive personal management agreement with TCM on November 13, 2004, in which TCM agreed to "act as Artist's sole and exclusive personal and career manager, representative and advisor." Per that agreement, TCM agreed to:

> "use reasonable efforts to direct, develop and enhance all phases of Artist's career, including but not limited to, advising and counseling (i) in the selection of literary, artistic and musical material; (ii) in any and all matters pertaining to publicity, public relations and advertising; (iii) in relation to the adoption of

---

[2] All references to the Bankruptcy Code shall be to 11 U.S.C. § 101 *et seq.*
[3] Fla. Stat. §§ 726.105, 726.106 and 726.108 ("FUFTA").
[4] Doc. No. 30.
[5] Doc. No. 35.

proper formats for presentation of Artist's talents; (iv) in the selection of artistic talent to assist, accompany or embellish Artist's presentation; (v) with regard to general practices in the entertainment and amusement industries and with respect to such matters of which [TCM] may have knowledge concerning compensation and privileges extended for similar values; and (vi) in the selection of talent, theatrical, modeling and employment agents.[6]

In exchange for these services, the Defendant agreed to devote himself to his entertainment career,[7] and only appear or perform at TCM's direction or request.[8] In other words, the Defendant agreed that TCM was entitled to act as his exclusive manager, and the Defendant would not seek management-type services from any other party. The contract also provided that, if TCM advanced or paid for any of the Defendant's out-of-pocket costs, including living or travel expenses, the Defendant was required to repay these amounts in full only from earnings he received from his performances in the entertainment industry.[9]

Shortly after the Defendant signed his management contract with TCM, he moved from Florida to California to start his entertainment career. Between December 2004 and June 2006, TCM advanced a total of $58,850.15 to the Defendant for his living and travel expenses. On June 12, 2007, TCM filed bankruptcy and the case was consolidated with the other jointly administered bankrupt entities.[10]

On June 12, 2009, the trustee filed an adversary complaint against Mr. Hines to recover the amounts TCM advanced to him for living and travel costs. Count I of the complaint alleges the advances, which were made within two years of TCM's bankruptcy, were constructively fraudulent transfers under § 548(a)(1)(B), and recoverable under § 550, because TCM was involved in a Ponzi scheme at the time, received less than reasonably equivalent value for the transfers, and was insolvent or otherwise met all the other hallmarks

---

[6] Doc. No. 27-3 at 1, ¶2.
[7] *Id*. at ¶3.
[8] *Id*. at 2, ¶4-6.
[9] *Id*. at 2-3, ¶ 8.
[10] Doc. No. 22.

of constructive fraud under § 548(a)(1)(B)(ii).[11] Count II alleges the advances made within four years of the Debtor's bankruptcy are avoidable and recoverable under similar Florida statutes.[12] In Count III, the trustee seeks to recover the advances under a breach of contract claim, alleging the advances are recoverable as damages because the Defendant failed to repay TCM as required by the exclusive personal management contract.[13]  Defendant has filed a motion to dismiss all three counts.[14] The Court will address the fraudulent conveyance actions (Counts I and II) and the breach of contract action (Count III) separately.

## Defendant's Motion to Dismiss Counts I and II is Denied

When reviewing a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6),[15] a court must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff.[16]  Dismissal is appropriate if the plaintiff "can prove no set of facts that would support the claims in the complaint."[17] A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."[18] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief.'"[19] However, a court's duty to accept facts in a complaint as true does not require it to ignore specific factual details in favor of general or conclusory allegations, nor does it

---

[11] Doc. No. 27 at 4-5.
[12] Doc. No. 27 at 6.
[13] Doc. No. 27 at 7.
[14] Doc. No. 35.
[15] Made applicable to bankruptcy proceedings by Bankruptcy Rule 7012(b)(6).
[16] *Financial Security Assur., Inc. v. Stephens, Inc.*, 450 F.3d 1257, 1262 (11th Cir. 2006).
[17] *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).
[18] *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 1949 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 & 570, 127 S. Ct 1955 (2007)).
[19] *Id.* (*citing* Fed. R. Civ. P. 8(a)(2)).

propose that a court should overlook exhibits that directly contradict the general and conclusory allegations of the pleading.[20] In that case, the more specific facts govern.[21]

Section 548(a)(1)(B) of the Bankruptcy Code allows the trustee to avoid a constructively fraudulent transfer, defined as

> any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred . . . within two years before the date of the filing of the bankruptcy petition, if the debtor
> (i) received less than reasonably equivalent value in exchange for the transfer or obligation, and
> (ii) (I) was insolvent on the date such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured, or
> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under and employment contract and not in the ordinary course of business.[22]

There is no dispute debtor was insolvent at the time these transfers occurred.[23] Ponzi schemes are, by their very nature, presumptively insolvent.[24] TCM filed bankruptcy because it was an actor in Pearlman's massive Ponzi scheme, and the Court consolidated its case with those of Pearlman's other defunct companies. Therefore the trustee need not allege specific facts supporting TCM's insolvency at the time of the transfers.

Despite the insolvency, defendant first argues the advance payments are not avoidable because they were "wages" under California labor law.[25] Defendant cites California Labor Code § 221, which states "It shall be unlawful for any employer to collect or receive from an

---

[20] *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007).
[21] *Id.*
[22] 11 U.S.C. § 548(B).
[23] *In re Bernard L. Madoff Inv. Sec. LLC*, 458 B.R. 87, 118 (Bankr. S.D.N.Y. 2011).
[24] *Id.*
[25] Doc. No. 30 at 11.

employee any part of wages theretofore paid by said employer to said employee."[26] Used in this context, wages are defined as "all amounts [received in exchange] for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation."[27] As defined more succinctly by the California courts, wages or earnings "are the amount the employer has offered or promised to pay, or has paid pursuant to such offer or promise, as compensation for that employee's labor."[28]

In this case, however, California law does not apply because the specific terms of the contract are expressly governed by the laws of New York.[29] In Florida, courts enforce contractual choice-of-law provisions, like the one in Paragraph 13(d) of the parties' exclusive management agreement, unless the law of the chosen forum contravenes public policy.[30] "The countervailing public policy must be of sufficient importance and rise above the level of routine policy considerations to warrant invalidation of a party's choice to be bound by the substantive law of another state."[31] Mr. Pearlman and his various businesses did business in New York, as evidenced by the numerous lawsuits filed against him there.[32] The Court can find no reason that would justify applying another state's laws, as defendant suggests.

Even, however, if California laws applied, the advances defendant received under the contract were not "wages" that would apply to the statute. TCM was under no obligation to pay any sums of money to defendant for any services defendant was obliged to perform. The

---

[26] Cal. Lab. Code § 221.
[27] Cal. Lab. Code § 200.
[28] *Prachasaisoradej v. Ralphs Grocery Co., Inc.,* 42 Cal. 4th 217, 228, 165 P.3d 133, 138 (2007).
[29] Doc. No. 27 -3 at ¶ 13(d) states "This agreement shall be governed by the laws of the State of New York applicable to contracts made and to be wholly performed in the State of New York without regard to any conflict of laws provisions of such State.").
[30] FLA. STAT. § 671.105 (2002); *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co.*, 761 So.2d 306 (Fla. 2000) (citing FLA. STAT. 671.105(1)).
[31] *S.E. Floating Docks, Inc. v. Auto-Owners Ins. Co.,* 82 So. 3d 73, 80 (Fla. 2012) (citing *Mazzini Farms, Inc. v. E.I. DuPont De Nemours and Co*., 761 So.2d at 312).
[32] *See e.g.,* Case No. 1:07-cv-02285-GBD –GWG, *Alkow et al v. Pearlman et al,* (finding "Plaintiffs were all victims of an ongoing enterprise, scheme, conspiracy, pattern of fraud, violation of New York, Florida, US and International laws, through which hundreds of millions of dollars were sent from New York, New Jersey, Connecticut, Michigan, Georgia, Arizona, Illinois, Idaho and Washington State and elsewhere into Defendant Banks in New York and Florida – monies that later disappeared into Europe").

contract clearly states "*if, and in the event* Manager shall advance or otherwise pay for and provide out of pocket costs and expenses for Artist's living and travel expenses . . . ."

Nor can the Court find that defendant was an employee, or that TCM was an employer as defined by Cal. Labor Code § 350.[33] Defendant was not under a contract for hire, nor was he obligated to perform tasks or services to TMC, except to use "reasonable efforts to devote himself to his professional career in the modeling and entertainment industries and do all things necessary and desirable to promote his career and earnings there from."[34] To the contrary, defendant "engaged" TCM to provide management services and expertise in the performing arts industry. The very first paragraph of the management contract between the parties states: "Artist hereby engages Manager, and Manager agrees to act as Artist's sole and exclusive personal and career manager, representative and advisor."[35] There simply is no argument under California law that prevents the trustee from recovering the advances simply because Mr. Hines contends they were wages.

Defendant next argues the advances were not recoverable as fraudulent conveyances because TCM received reasonably equivalent value for them, because defendant was "not free to engage in any performances other than those that were orchestrated by [TCM]."[36] Because of the exclusive nature of the management agreement, defendant claims TCM received "new value" every time it advanced money to defendant.[37] TCM argues the

---

[33] Cal. Lab. Code § 350 states:
    (a) "Employer" means every person engaged in any business or enterprise in this state that has one or more persons in service under any appointment, contract of hire, or apprenticeship, express or implied, oral or written, irrespective of whether the person is the owner of the business or is operating on a concessionaire or other basis.
    (b) "Employee" means every person, including aliens and minors, rendering actual service in any business for an employer, whether gratuitously or for wages or pay, whether the wages or pay are measured by the standard of time, piece, task, commission, or other method of calculation, and whether the service is rendered on a commission, concessionaire, or other basis.
    (c) "Employing" includes hiring, or in any way contracting for, the services of an employee.
[34] Doc. No. 27-3 at 1.
[35] *Id*. at ¶ 1.
[36] Doc. No. 30 at 3.
[37] *Id.* at 13.

opposite, that it never received reasonably equivalent value for the advances made to defendant.[38]

Generally, the question of whether reasonably equivalent value has been given in exchange for a transfer of property is a question of fact to be determined on a case-by-case basis, taking into consideration the arm's length nature of the transaction, the market value of the things exchanged, and purpose of § 548 in preserving assets for the estate.[39] Courts apply a balancing test and compare what was given with that which was received in exchange.[40]

In this case, the Defendant arguably gave at least some value to TCM by agreeing to work exclusively with TCM in pursuing his acting career. The exclusivity can be valued by the Defendant's move to California, his pursuit of his artistic career, and his waiver of his right to pursue artistic work on his own and engage other managers and promoters, perhaps including some who may have done more than TCM to help him market his talents.

Minimal value, however, is not what is required to dismiss a claim of fraudulent conveyance. Instead, the Defendant must prove the value obtained by TCM in exchange for his exclusivity was "reasonably equivalent" to the services TCM provided. The Court cannot make this determination at this time. Despite TCM's conclusory allegations that the Defendant received no fair consideration and less than reasonably equivalent value in exchange for the advances, the Defendant has failed to prove his abeyances constituted

---

[38] Doc. No. 27 at 4, 6.

[39] *In re TOUSA, Inc.,* 680 F.3d 1298, 1311 (11th Cir. 2012) (quoting *Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*, 904 F.2d 588, 593 (11th Cir.1990): "It has long been established that 'whether fair consideration has been given for a transfer is "largely a question of fact, as to which considerable latitude must be allowed to the trier of the facts."'"); *In re Churchill Mortg. Inv. Corp.*, 256 B.R. 664, 678 (Bankr. S.D.N.Y. 2000) *aff'd sub nom. Balaber-Strauss v. Lawrence*, 264 B.R. 303 (S.D.N.Y. 2001). *See also In re Se. Waffles, LLC*, 460 B.R. 132, 139 (B.A.P. 6th Cir. 2011) (citing *Lisle v. John Wiley & Sons, Inc. (In re Wilkinson),* No. 05–5744, 2006 WL 2380887 *3, 196 Fed.Appx. 337, 341 (6th Cir. Aug. 17, 2006); *Staats v. Butterworth Props., Inc. (In re Humble),* No. 00–3572, 2001 WL 1006148, *1, 19 Fed.Appx. 198, 200 (6th Cir. Aug. 20, 2001) (the analysis of reasonably equivalent value is "based upon the facts and circumstances of each particular case"); *Leibowitz v. Parkway Bank & Trust Co. (In re Image Worldwide, Ltd.),* 139 F.3d 574, 576 (7th Cir.1998) (whether "reasonably equivalent value" was received is a question of fact); *Gaudet v. Babin (In re Zedda),* 103 F.3d 1195, 1206 (5th Cir.1997) ("Whether a transfer is made for a reasonably equivalent value is, in every case, largely a question of fact.")).

[40] *Id*. *See also In re Churchill Mortg. Inv. Corp.*, 256 B.R. at 678 ("the determination of whether reasonably equivalent value was received by the debtor requires the court to compare what was given with what was received.").

reasonably equivalent value because he does not describe the level of "value" given, i.e., whether he would have moved or otherwise worked even without the contract, whether he actually obtained and utilized any of the services to seek opportunities, and whether he did all things necessary to promote his career as a performance artist. Sorting out these factual issues is not appropriate in a motion to dismiss, the purpose of which is to test the sufficiency of the allegations in the complaint, assumed to be true, and to determine whether plaintiff's allegations facially support the claim.[41] In this case, the Court finds they do, and the Defendant's motion to dismiss Counts I and II must fail.

## **Defendant's Motion to Dismiss Count III is Granted**

In New York, to prove a breach of contract, a party must establish (1) "the existence of an agreement; (2) due performance of the contract by the party alleging the breach; (3) a breach; and (4) damages resulting from the breach."[42] The Defendant argues the contract with TCM did not impose a duty to perform by repaying the advances because repayment was contingent on future earnings, and he had no earnings from which to repay the advances.[43] TCM does not dispute that the Defendant earned no income during the contract term, but maintains the Defendant was nevertheless contractually required to repay all amounts advanced for living and travel expenses. The Court disagrees.

The plain language of the contract contravenes TCM's argument that the Defendant was unconditionally required to return the $58,850 TCM advanced between 2004 and 2006. Section 8(a) of the contract states:

> Notwithstanding anything else to the contrary herein contained, if and in the event Manager (as opposed to any third party) shall advance or otherwise pay for and provide out of pocket costs and expenses for Artist's living and travel expenses ("Manager Advanced Amounts") during the Term hereof; all such amounts as reflected on the books and records of Manager shall be ***fully and completely recouped "off the top"*** at the rate of 50% of all Artist's Gross Receipts occurring hereunder and manager shall be entitled to retain or receive

---

[41] *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007).
[42] *In re Food Mgmt. Group, LLC*, 372 B.R. 171, 188-89 (Bankr. S.D.N.Y. 2007) (citations omitted).
[43] Doc. No. 35 at 4.

> (as the case may be ) all such Artist's Gross Receipts until such time and Manager shall have fully and completely recouped all Manager Advanced Amounts.

Nothing in the definition of Artist's Gross Receipts, as defined in Paragraph 8, indicates receipts must come from anything other than wages the Defendant earned as a result of his activities in the entertainment, modeling, and related industries while under contract with TCM. The contract indicates TCM has a right to recoupment "off the top," *if* advances are made. This condition limits TCM's rights of recovery to only those monies coming from gross receipts earned. A plain reading of the contract illustrates there was no due performance owed to repay the advances if the Defendant never earned "gross wages." Because it is undisputed that the Defendant earned no wages, and because he had no obligation to repay advances unless he earned gross receipts, plaintiff can prove no set of facts that would justify a basis for relief under Count III.

In summary, the Defendant's motion to dismiss as to Count III is granted. The Motion to Dismiss Counts I and II are denied. An order consistent with this memorandum opinion shall be entered.

DONE AND ORDERED in Orlando, Florida, on December 6, 2012.

_____
KAREN S. JENNEMANN
Chief United States Bankruptcy Judge